UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **JANE DOE,**<br><br>　PLAINTIFF,<br><br>-- against --<br><br>**THE JUILLIARD SCHOOL,**<br><br>　DEFENDANT. | **CIVIL ACTION NO. 25-8435** |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO PROCEED BY PSEUDONYM**

---

**THE FIERBERG NATIONAL LAW GROUP, PLLC**
Olympias Iliana Konidaris
305 Broadway, Seventh Floor
New York, New York 10007
Phone: (347) 504-0220
Fax: (231) 252-8100
ikonidaris@tfnlgroup.com

# TABLE OF CONTENTS

I. Factual Background ..................................................................................................1

II. Legal Standard .........................................................................................................3

III. Argument .................................................................................................................5

    A. The Pseudonym Factors Favor Permitting Plaintiff to Proceed Under Pseudonym Because her Privacy Interest Outweighs the General Presumption Favoring Open Trials and Any Prejudice to Defendant .................................................................5

        i. Factor One: This Litigation Involves Allegations of Sexual Assault, Harmful, False Information Regarding Plaintiff, and a Confidential Title IX Proceedings Which Are Highly Sensitive and Personal Matters.................6

        ii. Factors Two and Three: Plaintiff and Innocent Non-Parties Face a Severe Risk of Harm if Plaintiff is Identified, and Plaintiff Faces the Risk of Emotional and Reputational Harm, the Injury She Litigates Against .........7

        iii. Factor Four: Plaintiff is Particularly Vulnerable to the Possible Harms of Disclosure .................................................................................................9

        iv. Factor Six: Defendant is Not Prejudiced by Plaintiff Proceeding Under Pseudonym .................................................................................................9

        v. Factor Seven: Plaintiff's Identity Has Been Kept Confidential to the General Public .......................................................................................................10

        vi. Factor Eight: Allowing Plaintiff to Proceed Under Pseudonym Furthers the Public's Interest in Participation in Title IX Proceedings and Survivors Coming Forward and Vindicating Their Rights .........................................10

        vii. Factor Ten: There Are No Alternative Mechanisms to Protect the Confidentiality of Plaintiff Without Burdening the Public Interest...........11

IV. Conclusion .............................................................................................................11

# **TABLE OF AUTHORITIES**

**Cases**

*Doe v. Colgate Univ.*, No. 15-cv-1069, 2016 US Dist. LEXIS 48787
    (N.D.N.Y. Apr. 12, 2016) ...................................................................................................8

*Doe v. DNA Diagnostics Ctr. LLC*, 1:25-cv-2878, 2025 U.S. Dist. LEXIS 118934
    (S.D.N.Y. June 18, 2025) ...................................................................................................9

*Doe v. Gooding*, No. 20-cv-06569, 2022 US Dist. LEXIS 68607, at *11
    (S.D.N.Y. Apr. 13, 2022) .................................................................................................10

*Doe v. Hunter*, 23 Civ. 10394, 2024 U.S. Dist. LEXIS 143961, at *5
    (S.D.N.Y. Aug. 9, 2024) ...............................................................................................9, 11

*Doe v. Townes*, No. 19-cv-8034, 2020 U.S. Dist. LEXIS 83550 (S.D.N.Y. May 12, 2020) ..........7

*Doe v. Trs. of Columbia Univ. in the City of N.Y.*, 25-CV-1108, 2025 U.S. Dist. LEXIS 155888
    (S.D.N.Y. Aug. 12, 2025) ........................................................................................5, 6, 10

*Doe v. Vassar Coll.*, 19-cv-09601, 2019 U.S. Dist. LEXIS 196933 (S.D.N.Y. Nov. 13, 2019) ....8

*Rapp v. Fowler*, 537 F. Supp. 3d 521 (S.D.N.Y. 2021) .............................................................5, 6

*Roe v. Minguela*, No. 16-cv-02744, 2018 U.S. Dist. LEXIS 147677 (D. Colo. Aug. 30, 2018) ....7

*Sealed Plaintiff v. Sealed Defendant # 1*, 537 F.3d 185, 191 (2d Cir. 2008) ..............................3, 4

**Other Authorities**

Lynn Langton & Sofi Sinozich, U.S. Dep't of Justice, *Rape and Sexual Assault Victimization Among College-Age Females, 1995-2013*, at 1, 3 (2014), https://bjs.ojp.gov/library/publications/rape-and-sexual-assault-among-college-age-females-1995-2013 ...................................................................................................................................11

Rachel E. Morgan & Jennifer L. Truman, U.S. Dep't of Justice, *Criminal Victimization*, at 8, https://www.ojp.gov/ncjrs/virtual-library/abstracts/criminal-victimization-2019.........................11

Jayne S. Ressler, *Anonymous Plaintiffs and Sexual Misconduct*, 50 Seton Hall L. Rev. 955 (2020) .............................................................................................................................11

Plaintiff Jane Doe hereby submits this Memorandum of Law in Support of her Motion for Leave to Proceed Under Pseudonym. Defendant The Juilliard School ("Juilliard") does not oppose this Motion.

I. **FACTUAL BACKGROUND**

In December 2021, Plaintiff, then a Master of Fine Arts student at Juilliard, brought sexual-misconduct charges against her former boyfriend, John Roe[1], with Juilliard's Title IX Office, after being rushed by Juilliard, in violation of Title IX's implementing regulations, that she to do so for Juilliard to also issue a no-contact order ("NCO"). (Compl. ¶¶ 1, 21, 25.) Had Plaintiff been told that she could obtain an NCO without filing a complaint, she would have done so. (*Id.* ¶ 27.) Juilliard retained one of the nation's largest law firms to conduct an internal investigation, and that investigation – which included interviewing Plaintiff and Roe as well as twelve other witness and examining over sixty exhibits during a seven-month period – recommended multiple findings of responsibility against Roe. (*Id.* ¶¶ 1, 34.) The investigation yielded recommended findings against Roe, including that he strangled, struck, sexually assaulted, and filmed Plaintiff without her consent during sexual encounters. (*Id.* ¶ 2.)

Following the investigation, Juilliard conducted a hearing. (*Id.* ¶ 3.) Juilliard provided Plaintiff a non-attorney advisor for this hearing, who assured her that Juilliard's Hearing Panel rarely, if ever, overturned investigatory findings. (*Id.* ¶ 4.) As a result, Plaintiff did not entertain retaining a private attorney for the hearing. (*Id.* ¶ 36.) But, at this flawed and prejudicial hearing, Juilliard's Hearing Panel, among other things, held improper private meetings with Roe's counsel, allowed Roe's counsel to make numerous untrue statements concerning patently unlawful,

---

[1] John Roe is a pseudonym.

discriminatory, and sensitive information about Plaintiff's sexual and relationship history, mental health, and medical information, without her or her advisor present. (*Id.* ¶ 8.) Even if these statements were true, they were impermissible during the hearing under both federal and New York law and Juilliard's policies. (*Id.*)

For example, at one point, Roe's attorney falsely stated to Plaintiff's key witness, Witness 1, "[s]o you are aware she was hospitalized, she had hospital issues before she met [Roe], isn't that correct?", a "fact" that was not contained anywhere in the evidentiary record. (*Id.* ¶ 10.) Roe's attorney then requested a private breakout room with Juilliard's Hearing Panel to advocate on behalf of her client, an improper request for *ex parte* communications the Hearing Panel should not have authorized. (*Id.* ¶ 81.) Behind closed doors, without Plaintiff or her advisor present, Juilliard's Hearing Panel then allowed Roe's attorney to improperly influence the process with untrue, misogynistic, gender- and disability-biased information about Plaintiff, without providing Plaintiff an opportunity to learn of the evidence presented against her and to respond to such evidence, as required by Title IX and Juilliard's policies. (*Id.*) Unchecked, Roe's attorney stated that Plaintiff "had a breakdown before"; "everyone who knew her knew that she had issues with guys, issues with concern someone would rape her because she'd been raped before"; and "she tried to kill herself." (*Id.* ¶ 10.) Roe's attorney continued with inappropriate, irrelevant, and gender-biased stereotypes that victims of gender-based violence are dishonest, mentally unstable, and "fragile." (*Id.* ¶¶ 13, 81.)

After the improper *ex parte* meeting concluded, the Hearing Panel continued to guide, help, and invite Roe's attorney to peddle false and inaccurate "facts" to establish that Plaintiff, as a previous victim of sexual assault and/or someone with previous mental health issues, had engaged in a "pattern" of behavior in "prior relationships or interactions with others" that made her more

susceptible to falsely accusing Roe of rape. (*Id.* ¶ 89.) Among other things, Roe's attorney asked witnesses if they knew Plaintiff had attempted suicide and about her last boyfriend. (*Id.* ¶ 92.) The Hearing Panel deemed these and other questions relevant, despite these questions violating Juilliard's policies and the law. (*Id.* ¶ 97.) Ultimately, due to the tainted hearing, the Hearing Panel found Roe not responsible on all charges, refused to extend the bilateral no-contact order, and Juilliard denied Plaintiff's appeal. (*Id.* ¶ 3.) As a result, Plaintiff had to continue her studies on campus with Roe, without any safety measures in place. (*Id.* ¶ 19.) With Plaintiff's reputation tarnished among her Juilliard classmates, the witnesses – many of whom were close friends – and among faculty, Plaintiff received smaller roles and has suffered significant career setbacks as a result, including not getting signed to a major talent agency upon graduation. (*Id.* ¶ 117.)

Plaintiff suffers from unspecified depressive disorder, insomnia, weight loss, rumination, and digestive issues requiring medical attention, panic attacks, and feelings of despair and hopelessness. (*Id.* ¶ 129.)

## II. LEGAL STANDARD

While Federal Rule of Civil Procedure 10(a) requires a complaint to "include the names of all the parties," district courts, in their discretion, may allow litigants to proceed under pseudonym in some circumstances. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 189 (2d Cir. 2008). Before doing so, a court must weigh the plaintiff's interest in proceeding under pseudonym against "the public interest in disclosure and any prejudice to the defendant." *Id.* In making this determination, courts weigh ten non-exhaustive factors, including:

> (1) "Whether the litigation involves matters that are highly sensitive and of a personal nature";

(2) "Whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties";

(3) "Whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity";

(4) "Whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of [her] age";

(5) "Whether the suit is challenging the actions of the government or that of private parties";

(6) "Whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court";

(7) "Whether the plaintiff's identify has thus far been kept confidential";

(8) "Whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose [her] identity";

(9) "Whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities"; and

(10) "Whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff."

*Id.* at 189–90 (cleaned up). In addition, district courts may consider "other factors relevant to the particular case." *Id.*

### III. ARGUMENT

#### A. The Pseudonym Factors Favor Permitting Plaintiff to Proceed Under Pseudonym Because her Privacy Interest Outweighs the General Presumption Favoring Open Trials and Any Prejudice to Defendant

Although "allegations of sexual assault, by themselves, are not sufficient to entitle a plaintiff to proceed under a pseudonym," such allegations are "paradigmatic examples of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp v. Fowler*, 537 F. Supp. 3d 521, 528 (S.D.N.Y. 2021) (citations omitted). Further, as this Court has recognized, "case law from this District and the Second Circuit illustrates that courts have generally granted pseudonymity in Title IX cases to students who participated in Title IX proceedings." *Doe v. Trs. of Columbia Univ. in the City of N.Y.*, 25-CV-1108, 2025 U.S. Dist. LEXIS 155888, at *15–16 (S.D.N.Y. Aug. 12, 2025) (collecting cases). Indeed, Juilliard's Title IX Policy itself notes that "[m]aintaining confidentiality is important to preserve the integrity of the investigation [and] protect student and witness privacy." The Office of Non-Discrimination and Title IX, *The Juilliard School Title IX Sexual Misconduct Policy*, The Juilliard School (Aug. 5, 2025), available at https://www.juilliard.edu/non-discrimination-and-title-ix.

Here, as is often true in cases involving sexual assault and Title IX proceedings, the ten factors taken together favor allowing Plaintiff to proceed under pseudonym. This litigation concerns allegations involving sexual assault, confidential Title IX proceedings, and false statements made about Plaintiff's mental health, medical history, and sexual history, which are of the utmost personal and sensitive nature. If Plaintiff is linked to this information, she faces an immense risk of mental or physical harm, including the very injury to her reputation and emotional

5

harm which she litigates against, as do innocent non-parties. In contrast, Defendant faces no prejudice if Plaintiff is permitted to proceed under pseudonym because it possesses Plaintiff's name and relevant witnesses and documents and therefore can effectively conduct discovery and prepare its defenses. Lastly, allowing Plaintiff to proceed under pseudonym furthers the public interest in survivors exercising their rights under Title IX and witnesses freely participating in Title IX investigations. Accordingly, as demonstrated through the ten factors analyzed below, Plaintiff should be permitted to proceed under pseudonym.[2]

> i.  ***Factor One: This Litigation Involves Allegations of Sexual Assault, Harmful, False Information Regarding Plaintiff, and a Confidential Title IX Proceedings Which Are Highly Sensitive and Personal Matters***

Allegations involving sexual assault are "paradigmatic examples of highly sensitive and personal claims and thus favor a plaintiff's use of a pseudonym." *Rapp*, 537 F. Supp. 3d at 528. Courts also generally grant pseudonymity in cases involving Title IX proceedings. *See Trs. of Columbia*, 2025 U.S. Dist. LEXIS 155888, at *15–16.

Here, this case involves allegations of sexual assault, which favors pseudonymity. It also involves Title IX proceedings, which Juilliard recognizes require confidentiality to preserve the integrity of the investigation and student and witness privacy. The Office of Non-Discrimination and Title IX, *The Juilliard School Title IX Sexual Misconduct Policy*, The Juilliard School (Aug. 5, 2025), available at https://www.juilliard.edu/non-discrimination-and-title-ix. In addition, this case also involves other allegations of highly sensitive information about Plaintiff disclosed in an otherwise confidential hearing, such as statements, which were untrue, that she had previously attempted suicide, had mental breakdowns, and was previously raped, which never should have

---

[2] Plaintiff acknowledges that the fifth and ninth factors disfavor pseudonymity as she is suing a private party and this case involves factual issues as well as legal issues. However, the remaining factors outweigh these two factors.

been disclosed per federal and New York law. (*See* Compl. ¶ 12.) Therefore, the first factor favors allowing Plaintiff to proceed under pseudonym.

> ii.  *Factors Two and Three: Plaintiff and Innocent Non-Parties Face a Severe Risk of Harm if Plaintiff is Identified, and Plaintiff Faces the Risk of Emotional and Reputational Harm, the Injury She Litigates Against*

"The second and third factors evaluate the risk that identification would present and the likelihood of those physical and mental harms. If disclosure creates risk of harm from third parties, disclosure is disfavored." *Doe v. Townes*, No. 19-cv-8034, 2020 U.S. Dist. LEXIS 83550, at *10 (S.D.N.Y. May 12, 2020) (citation omitted).

Here, Plaintiff faces concrete risks of physical and mental harms. As described by her therapist, Plaintiff is being treated for unspecified depressive disorder and related symptoms, including negative moods, rumination, states of distress, and feelings of helplessness. (Exhibit 2, at 1.) Her therapist further opines that revealing her name will exacerbate these symptoms, as well as create further trauma and lead to additional emotional harm. (*Id.* at 1–2.)

These harms are also compounded by Plaintiff's public-facing career. As someone in a public-facing profession, outing Plaintiff as a survivor of sexual assault increases the risk of harm she could face professionally and personally. *See Roe v. Minguela*, No. 16-cv-02744, 2018 U.S. Dist. LEXIS 147677, at *31 (D. Colo. Aug. 30, 2018) ("Victims of rape and other forms [of] sexual assault are often stigmatized in a manner that affects their educational, employment, and social prospects.") (citing Paul Marcus & Tara L. McMahon, *Limiting Disclosure of Rape Victims' Identities*, 64 S. Cal. L. Rev. 1020, 1030–36 (1991)). In fact, as Plaintiff alleged in the Complaint, she has already faced personal and professional consequences as a result of the facts underling this action. (Compl. ¶¶ 129–32.)

Further, if her identity is disclosed, Plaintiff faces the risk of the very injury she litigates against, including the harm to her reputation caused by untrue statements propounded by Roe's counsel and the Hearing Panel about her sexual history and mental health. (*Id.* ¶ 19.) Forcing her to proceed by her true name would undermine her claims that a procedurally flawed process caused her emotional and reputational harm by causing her further emotional and reputational harm through publicly associating her with the harmful, false information about her and the tainted outcome of the proceeding. *See Doe v. Colgate Univ.*, 5:15-cv-1069, 2016 U.S. Dist. LEXIS 48787, at *9 (N.D.N.Y. Apr. 12, 2016) (reasoning that when challenging the fairness and impartiality of a Title IX proceeding "forcing Plaintiff to reveal his identity would further exacerbate the emotional and reputational injuries he alleges" and noting that forcing a plaintiff to reveal their true identity in connection with challenging Title IX proceedings would have a "potential chilling effect" on future plaintiffs). That the case involves Title IX proceedings also creates a risk of harm to both Plaintiff and other parties, including Roe and the other individuals interviewed as witnesses in the Title IX proceedings. *See id.* at *6 ("Recently, cases stemming from investigation of sexual abuse on college and university campuses have garnered significant media attention, posing the risk of further reputational harm to both *the plaintiffs in these cases and their accusers*.") (emphasis added) (citation omitted); *id.* ("[P]rotecting the anonymity of sexual assault victims and those accused of committing sexual assault can be an important safeguard to ensure that the due process rights of all parties involved are protected."); *Doe v. Vassar Coll.*, 19-cv-09601, 2019 U.S. Dist. LEXIS 196933, at *4 (S.D.N.Y. Nov. 13, 2019) ("Public exposure of [alleged non-consensual sexual contact between students] for both the victim and the accused, at this stage, may be personally damaging."). Therefore, this factor favors allowing Plaintiff to proceed under pseudonym.

8

### iii.    Factor Four: Plaintiff is Particularly Vulnerable to the Possible Harms of Disclosure

As Plaintiff has stated in her declaration, and as further supported by information from her therapist, Plaintiff is particularly vulnerable to the possible harms of disclosure due to her depressive disorder and its accompanying symptoms, including ruminations, panic attacks, feelings of despair, as well as weight loss and digestive issues, which have required medical care. (Exhibit 1, at ¶ ; Exhibit 2, at 1.) Accordingly, this factor favors allowing Plaintiff to proceed under pseudonym.

### iv.    Factor Six: Defendant is Not Prejudiced by Plaintiff Proceeding Under Pseudonym

Courts must analyze "whether the defendant is prejudiced by allowing the plaintiff to press [her] claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court." *Doe v. Skyline Autos. Inc.*, 375 F. Supp. 3d 401, 407 (S.D.N.Y. 2019) (citation omitted). "Generally, a defendant is 'not greatly prejudiced in [its] ability to conduct discovery' if the defendant 'knows Plaintiff's name.'" *Doe v. DNA Diagnostics Ctr. LLC*, 1:25-cv-2878, 2025 U.S. Dist. LEXIS 118934, at *17 (S.D.N.Y. June 18, 2025) (quoting *Doe v. Kolko*, 242 F.R.D. 193, 198 (E.D.N.Y. 2006)). And where a defendant is aware of a plaintiff's "true identity," there is little risk of prejudice. *Doe v. Hunter*, 23 Civ. 10394, 2024 U.S. Dist. LEXIS 143961, at *5 (S.D.N.Y. Aug. 9, 2024) (citing *Colgate*, 2016 U.S. Dist. LEXIS 48787, at *9).

Here, Plaintiff has already revealed her name to Juilliard. Therefore, Juilliard faces little risk of prejudice. Further, any risk of prejudice is lessened because the allegations underlying this case involve an investigation and proceedings conducted by or on behalf of Juilliard itself, meaning that documents created during that investigation, which identify materials and witnesses relevant

9

to Juilliard's defenses, are already within its control. Plaintiff is also willing to enter into a stipulated protective order or a similar confidentiality agreement to minimize any prejudice during discovery. Lastly, this Court has discretion to revisit any ruling permitting Plaintiff to proceed by pseudonym should Juilliard raise legitimate concerns that it is prejudiced by Plaintiff's pseudonymity as the case proceeds. *See Doe v. Gooding*, No. 20-cv-06569, 2022 U.S. Dist. LEXIS 68607, at *11 (S.D.N.Y. Apr. 13, 2022) (noting that "the Court's decision does not resolve the pseudonym issue for all time" and may be revisited at another state in the litigation). Accordingly, this factor favors allowing Plaintiff to proceed under pseudonym.

> v.  *Factor Seven: Plaintiff's Identity Has Been Kept Confidential to the General Public*

Plaintiff's identity is currently confidential to the general public. And, as evidenced by seeking to proceed under a pseudonym and her declaration stating such, Plaintiff does not wish for her identity to become public. (Plaintiff's Declaration at ¶ 21.) Therefore, this factor favors allowing Plaintiff to proceed under pseudonym.

> vi.  *Factor Eight: Allowing Plaintiff to Proceed Under Pseudonym Furthers the Public's Interest in Participation in Title IX Proceedings and Survivors Coming Forward and Vindicating Their Rights*

Plaintiff brings this lawsuit to challenge what she alleges was a procedurally inappropriate Title IX process. Allowing Plaintiff to proceed under pseudonym furthers the public interest of encouraging survivors to exercise their Title IX rights as well as encouraging non-survivors to serve as witnesses in Title IX proceedings. *See Trs. of Columbia*, 2025 U.S. Dist. LEXIS 155888, at *19–20 ("The Judicial interest in protecting the privacy and future participation of those involved in Title IX matters . . . sufficiently outweighs any public interest [in identifying a Title IX participant]."). The public has an interest in fair and confidential Title IX processes.

Further, "courts have recognized the important public interest in protecting the identities of sexual assault victims to ensure that other victims would not be deterred from reporting similar crimes." *Hunter*, 2024 U.S. Dist. LEXIS 143961, at *6 (citing *Vassar Coll.*, 2019 U.S. Dist. LEXIS 196933, at *2). Compounding on this important public interest, sex crimes and sexual assault are highly underreported, as a general matter. *See* Rachel E. Morgan & Jennifer L. Truman, U.S. Dep't of Justice, *Criminal Victimization*, at 8, https://www.ojp.gov/ncjrs/virtual-library/abstracts/criminal-victimization-2019. This is especially true for college-aged women, like Plaintiff, who are at a higher risk of rape and sexual assault than women of other age groups, yet only 20% of female college students who are sexually assaulted ever report it. Lynn Langton & Sofi Sinozich, U.S. Dep't of Justice, *Rape and Sexual Assault Victimization Among College-Age Females, 1995-2013*, at 1, 3 (2014), https://bjs.ojp.gov/library/publications/rape-and-sexual-assault-among-college-age-females-1995-2013. Many sexual assault survivors do not come forward because they fear they will have to reveal their identities and as a result suffer shame, blaming, retaliation, and harm to their careers, social lives, and families. *See* Jayne S. Ressler, *Anonymous Plaintiffs and Sexual Misconduct*, 50 Seton Hall L. Rev. 955 (2020). Pseudonymity can limit the harms associated with coming forward. Accordingly, this factor weighs in favor of allowing Plaintiff to proceed under pseudonym.

      ***vii.***    ***Factor Ten: There Are No Alternative Mechanisms to Protect the Confidentiality of Plaintiff Without Burdening the Public Interest***

Finally, there are no alternatives mechanisms to protect the confidentiality of Plaintiff and nonparties without burdening the public interest. Plaintiff is not seeking to seal the proceedings from the public, which would more greatly burden the public's interest in open court proceedings. Thus, this factor weighs in favor of allowing Plaintiff to proceed under pseudonym.

**IV.**    <u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiff respectfully requests that she be allowed to proceed under pseudonym in this case.

Dated: October 10, 2025

Respectfully submitted,

THE FIERBERG NATIONAL LAW GROUP, PLLC

_____
Olympias Iliana Konidaris
305 Broadway, Seventh Floor
New York, New York 10007
T: (347) 504-0220
ikonidaris@tfnlgroup.com

*Attorney for Plaintiff Jane Doe*

## **CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Olympias Konidaris, attorney for Plaintiff Jane Doe, hereby certify that the foregoing was prepared using Microsoft Word, and contains 3760 words, exclusive of the Table of Contents, Table of Authorities, signature blocks, and this certification, as calculated by the application's word counting function.

Dated: New York, New York
October 10, 2025